the state of New York contained this provision of the statute of Anne. In Ruggles v. Keeler, 3 Johns. 267, Kent, C. J., delivering the opinion of the court upon the construction to be given to the act in this respect, said: "Whether the defendant be a resident of this state, and only absent for a time, or whether he resides altogether out of the state, is immaterial. He is equally within the proviso. If the cause of action arose out of the state, it is sufficient to save the statute from running in favor of the party to be charged, until he comes within our jurisdiction. This has been the uniform construction of the English statutes, which also speak of the return from beyond seas of the party so absent. The word return has never been construed to confine the proviso to Englishmen, who went abroad occasionally. The exception has been considered as general, and extending equally to foreigners who reside always abroad." See, also, 5 Bac. Abr. 235. In Hall v. Little, 14 Mass. 203, the plaintiff was a foreigner who had never resided within the United States, and the court held that he was within the exception in favor of persons "beyond the seas," when the right of action accrued. In Wilson v. Appleton, 17 Mass. 181, the ruling in the last case was followed, and the court says: "That the word return cannot restrict the operation" (of the exception) "to those only who have been in the commonwealth, and have left it for temporary purpose." In Bulger v. Roche, 11 Pick. 39, the parties were both aliens and without the United States when the cause of action accrued. Shaw, C. J., in delivering the opinion of the court, says: "The statute itself provides that it shall not be understood to bar any person, beyond sea. * * * This proviso in terms excludes the operation of the statute in all cases, where the plaintiff is out of the commonwealth at the time the cause of action accrues, without distinguishing whether the plaintiff be a citizen or one who has formerly resided in the state and who is casually absent, or a foreigner who has never been within it." In Von Hemert v. Porter, 11 Metc. [Mass.] 215, the plaintiff was a foreigner who had never been within the United States, and it was held that the statute did not run against him, because he was within the words of the exception therein—"absent from the United States." These cases and others are cited and commented on in Ang. Lim. § 204 et seq., as establishing the doctrine that the saving of the right to sue to persons "beyond seas," "absent from the state," etc., until after they return, applies as well to persons who have never been in the country as to those who have.

In the light of these authorities and the uniform construction that has been given to similar language in other statutes, no other conclusion can be reached, than that the plaintiffs are entitled to five years after their return to the state, to bring this action,

whether they ever resided in it or not. They were "out of the territory" when the cause of action accrued, and are therefore within the purview of the exception or saving clause. The word return in like statutes having never been allowed to restrain or limit the saving clause to persons only temporarily out of the country, it ought not to be taken in that sense in the case before the court. In enacting the statute the legislature is presumed to have intended that the language of the exception should be taken and understood according to the long established construction in like case.

The demurrer is sustained.

[See Case No. 6,548.]

NOTE. In a similar action to recover possession of real property, brought [by Frederick Elliott against Charles B. Upton] to recover another undivided tenth of the premises described in the above opinion, the ruling of the court was the same. [Case not reported.]

## Case No. 6,548.

HOBART et al. v. UPTON.

[2 Sawy. 302.][1]

Circuit Court, D. Oregon.   Dec. 2, 1872.

GUARDIAN—SALE OF LAND BY.

Under the act of December 16, 1853, relating to the sale of lands of persons under guardianship, a sale by a guardian of his ward's land, as against such ward or those who claim under him, is void, unless it appears that the same was made at public auction, after due notice of the time and place thereof.

[Cited in Goldsmith v. Gilliland, 23 Fed. 646.]

[Bill by W. W. Hobart and others against Charles B. Upton.]

Benton Killen, for plaintiffs.
John Catlin, for defendant.

DEADY, District Judge. This action is brought to recover possession of an undivided one tenth of 318.37 acres of land in Washington county, alleged to be the estate in fee simple of Marin Elliott, the wife of plaintiff, Hobart. On November 6, 1872, it was before the court on a demurrer to a plea of the special statute of limitations in case of lands sold at guardian's sale, when the plea was determined to be insufficient. [Case No. 6,547.]

On November 25, the cause was tried by the court without a jury, upon a denial of the allegations of the complaint.

On the trial, it was agreed that the plaintiff, Marin Elliott, was on October 7, 1854, the owner of the undivided interest in the premises, as alleged in the complaint, and is so still, unless the plaintiffs have since acquired such interest; and also, that if a certain alleged order of the probate judge of

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Washington county, of the date last aforesaid, purporting to license one George W. Elliott, as guardian of said Marin Elliott, to sell the interest of said Marin Elliott in said premises, and the deed of said George W. Elliott thereunder to Theodore S. and Brookes Trevett, dated November 3, 1854, had the effect to divest said Marin Elliott of said interest, and to vest the same in said Theodore S. and Brookes Trevett, that said defendant has since acquired said interest by sufficient mesne conveyances.

A certified copy of said alleged order of sale and deed was introduced in evidence. The statute in force when these proceedings are alleged to have taken place, was the act of December 16, 1853, relating to the sale of lands of persons under guardianship. Section 20 of the act (Code Or. 1854, p. 372) provides that:

"In case of an action relating to any estate, sold by a guardian under the provisions of this chapter, in which the ward, or any person claiming under him, shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings. Provided, it shall appear:

"1. That the guardian was licensed to make the sale, by a probate court of competent jurisdiction.

"2. That he gave a bond that was approved by the probate judge;

"3. That he took the oath prescribed in this chapter;

"4. That he gave notice of the time and place of sale, as prescribed by law; and,

"5. That the premises were sold accordingly, at public auction, and are held by one who purchased them in good faith."

The order allowing the sale was made in vacation, and contains no description of the lands other than "said Marin's interest in and to an undivided portion of a land claim situate in Washington county, Oregon." It recites that it is made upon the petition of George W. Elliott, guardian of Marin Elliott, minor heir of John Elliott, deceased, "representing that it would be for his said ward's interest to dispose of the same at private sale." The petition appearing satisfactory to the court for the matters therein prayed for, it is therefore ordered, etc.—substantially that the guardian have power to sell, but whether at public or private sale, is not mentioned. The deed contains no reference to the order of sale, or the proceedings under it.

On behalf of the plaintiff, it is maintained that each of the five particulars contained in the proviso to section 20 of the act is essential to the validity of a sale under it, and that, unless it appears from the proof that all these things were had and done, as against the plaintiff, the sale is invalid. This position, it seems to me, must be conceded. When the act declares that a sale by a guardian "shall not be avoided on account of any irregularity in the proceedings: provided, it shall appear," as above stated, it in effect

declares that if these things, or any of them, do not appear, such sale may be avoided on account of such irregularity; or, in other words, that it is invalid, and does not affect the title of the ward.

Many questions were raised, upon the argument of this case, by counsel for plaintiffs, which it is not necessary now to decide, for it is manifest that this sale is invalid—absolutely void—because not made upon notice of the time and place thereof, and at public auction.

The act (Code Or. 1854, p. 371) provides that the guardian shall give bond "to sell the land in the manner prescribed for sales of real estate by executors and administrators." A sale by an executor or administrator was required to be made in the county where the lands were situated, after notice of the time and place thereof, and at public auction (Id. 334).

The petition, according to the recital in the order, asked that the property might be sold at private sale, but the order is indefinite upon the point. It not appearing from the deed, or any subsequent proceeding, that the sale was public, after due notice of the time and place appointed therefor, but the most reasonable inference from such deed being that the sale was made privately and without notice, it is void as against the plaintiffs.

This being so, there is no question but that the plaintiffs are entitled to recover the possession of the premises.

[See Case No. 6,547.]

## Case No. 6,549.

Ex parte HOBBS.

In re HAPGOOD.

[2 Lowell, 491;[1] 14 N. B. R. 495.]

District Court, D. Massachusetts. Sept., 1876.

BANKRUPTCY- FOLLOWING TRUST FUNDS.

1. Where a bankrupt, being trustee, has deposited trust money, with his own, in a bank, in his own name, his cestuis que trustent, or he as representing them, may have a trust declared in the trust-moneys.

2. The apportionment of the balance of the bank account may be ascertained from the dates of deposits and withdrawals of the trust, and the general funds, respectively.

Mr. Hapgood, the bankrupt, was trustee, under a private assignment made by S. Sutton & Co. for the benefit of their creditors. In the course of settling that estate, he sold machinery and other assets, and paid certain charges and privileged debts; and in February, 1876, he had received $1,500 or thereabouts more than he had paid out. The money received, when not paid out at once, was deposited in the Revere National Bank with Hapgood's own money and to his own

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]