## GOLDSMITH *v.* GILLILAND and others.

*(Circuit Court, D. Oregon.* May 20, 1885.)

1. BOND OF A GUARDIAN.

Under section 10 of the act of December 16, 1853, (Laws, Or. 739,) the security required of a guardian, licensed to sell the real property of his ward, is a writing obligatory or "bond" in a definite sum, and upon the conditions therein specified, and not a mere "undertaking;" and such bond must be given in such sum as the county judge may direct, and with such sureties as he may approve.

2. SAME—WHO MAY QUESTION SALE ON ACCOUNT OF.

No one can question the validity of a guardian's sale for want of sufficient security given by him, except the ward or some one claiming under him.

Suit to Determine Adverse Claim to Real Property.

*George H. Williams,* for plaintiff.

*James F. Watson,* for defendants.

DEADY, J. This suit is brought by the plaintiff, a citizen of New York, to have his title to an undivided five-eighths of the Danforth Balch donation quieted, as against the claim of the defendants, citizens of Oregon, of an estate or interest therein adverse to him.

In his amended bill the plaintiff deraigns his title to the premises from the donee of the United States, Mary Jane Balch, the wife of Danforth Balch, and in so doing shows that on May 4, 1868, the eight minor children of said Danforth and Mary Jane Balch were the owners of the premises, as tenants in common, subject to a life estate therein, for the life of their mother, when one C. S. Silver was appointed by the county court of Multnomah county, their guardian; that on July 12, 1870, said Silver obtained an order from said court to sell the interests of four of said children in the premises, which he did on September 24, 1870, and conveyed the same to the purchaser under whom the plaintiff claims.

The defendants demur to the amended bill, for that the "complainant hath not by his own showing made out a case which establishes his right, title, or interest;" and on the argument thereof made the point that the guardian's sale was invalid, and no title or interest passed to the purchaser thereat, because it does not appear that the guardian, before making such sale, gave a bond as required by statute.

By section 10 of the act of December 16, 1853, (Laws Or. 739,) it is provided that a guardian, before selling the real property of his ward, shall "give bond to the county judge   *   *   *   with sufficient surety or sureties, with condition to sell the same in the manner prescribed for sales of real estate by executors or administrators, and to account for and dispose of the proceeds of the sale in the manner provided by law."

By section 20 of the same act, (Laws Or. 740,) it is provided that in any action relating to property sold by guardian under said act, in which "the ward or any person claiming under him shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings: provided it shall appear," among other things, that the guardian "gave a bond that was approved by the county judge."

In *Gager* v. *Henry*, 5 Sawy. 245, this court held that a sale by a guardian, when authorized by a court of competent jurisdiction, could not be questioned collaterally, except as allowed by this section of this act. See, also, *Hobart* v. *Upton*, 2 Sawy. 302. Upon this point the amended bill states that the county court licensed the guardian to sell the property "upon his giving bond in the sum of $6,000 as prescribed by law, which bond was accordingly given and approved by said court."

The argument in support of the demurrer assumes that the word "bond" in this act is used as a synonym with the word "undertaking," and that the court had no power to limit the amount of such undertaking to $6,000 or otherwise, but that the same should have been given generally as a security that the property would be duly sold and the proceeds, be they more or less, duly accounted for; and because this was not done counsel insists that the act was not complied with in this particular, and therefore the sale was invalid and the purchaser took nothing under it. In the primary sense of the word, an "undertaking" is simply a promise. But in modern times, it is most frequently used to signify a written promise, not under seal, made by a party in the course of legal proceedings as a prerequisite to obtaining some special process, order, or allowance in his cause. In proceedings according to the Code of Civil Procedure, it has taken the place of the "bond," and is given without limit as to the liability of the undertakers, unless otherwise specially provided by statute. *State* v. *Mahoney*, 8 Or. 207. But a "bond" is a writing under seal, by which the maker or obligor acknowledges himself indebted to another, called the obligee, in a specified sum, which he thereby "binds" him-

self to pay. If taken as a security for the performance or forbearance of any act, a clause is added, called a condition, in which the circumstances leading to its execution are recited, and by which it is in effect provided that if the obligor shall perform or forbear accordingly that the obligation shall be void.

When the act of 1853 was passed the word "undertaking," in the sense of a substitute for a bond, was unknown to the legislation of Oregon. But at the same session sundry acts were passed regulating the practice in the courts, which were taken from the New York Code of Civil Procedure. In these the term was first used. But there is not the slightest ground for supposing that the legislature used the term "bond" in the sense of "undertaking," or otherwise than in its well-known and universally understood legal sense. Now, one of the essentials of a bond is that the obligor shall acknowledge himself indebted to the obligee in a definite sum. Without this a bond cannot be given. Therefore, when the act required the guardian to give a "bond to the county judge," conditioned as therein provided, it in effect required him to give security for the faithful performance of his trust, in such sum and with such sureties as such judge might direct and approve.

The county judge before whom the proceeding is had has the means of knowing the probable value of the property, and the statute trusts him, as it must some one, to fix the amount of the bond at a sum sufficient to make it ample security to all concerned. And this view is fully confirmed by subdivision 1 of section 20, which in effect declares the sale legal in this respect, whenever it appears that the guardian "gave a bond that was approved by the county judge." This the bill shows was done in this case, and it is sufficient. But I do not perceive that the defendants are in a condition to raise this question. They have not yet answered and disclosed the nature of their claim, and therefore it does not appear whether they claim under the wards in this sale or adversely to their title. Taken together, sections 20 and 22 of the act provide that if the party contesting the validity of a guardian's sale claims under the ward, it must appear, among other things, that the guardian gave a bond to the approval of the county judge; but if the person questioning such sale claims adversely to the title of the ward, then it is only necessary that it should appear that the guardian was authorized to make the sale, and "that he did accordingly execute and acknowledge, in legal form, a deed for the conveyance of the premises."

Whatever may be commonly known or understood about the nature of the defendants' claim to this property, the court cannot assume or take notice that they claim under the wards of the guardian who made this sale, and until that fact appears they cannot be heard to question the validity of such sale on the ground of the insufficiency of the surety given by the guardian. The demurrer must be overruled, and it is so ordered.